IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **GREGORY KENT LANDHEIM,**<br><br>           **Plaintiff,**<br><br>vs.<br><br>**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, AMD "THE PHARMACOPEIA, INC.  ACCELERYS, INC. LONG TERM DISABILITY PLAN,"**<br><br>           **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:04CV761DAK |

      In this case, Plaintiff Gregory Kent Landheim has appealed Defendants' denial of long-term disability leave.  The Prudential Insurance Company of America is the ERISA Plan Administrator for "The Pharmacopeia, Inc. Accelerys, Inc. Long Term Disability Plan."  Plaintiff has named both entities as defendants.  Plaintiff and Defendants have filed cross motions for summary judgment, and Defendants have filed a motion to strike materials attached to Plaintiff's motion for summary judgment.  The court held a hearing on these motions on March 9, 2006.  At the hearing, Plaintiff was represented by Brian King and Lawrence Buhler, and Defendants were represented by Jon Martinson.  The court took the motions under advisement.  The court has carefully considered all pleadings and memoranda submitted by the parties, the administrative record, and the law and facts relevant to the parties' motions.  Now being fully advised, the court enters the following Memorandum Decision and Order.

1

**BACKGROUND**

Landheim was employed with Accelerys, Inc. as a senior scientific programmer and covered under the Pharmacopeia, Inc. Accelerys, Inc. Long Term Disability Plan ("The Plan"). The Plan constitutes an employee welfare benefit plan as defined by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). The Plan was fully insured through Prudential Insurance Company of America. Prudential was also the claims administrator and fiduciary for the long-term disability plan.

The Plan provides that an individual is
> disabled when Prudential determines that:
>
> • you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury;
>
> • you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury; and
>
> • you are under the regular care of a doctor.

The Plan further provides that Prudential "will stop sending you payments and your claim will end on the earliest of the following: . . . . 4. The date you fail to submit proof of continuing disability satisfactory to Prudential." And, the Plan states that Prudential "may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor."

Landheim stopped working on September 12, 2002. Accelerys paid Landheim short-term disability benefits from its self-funded plan beginning September 19, 2002. On October 23, 2002, Accelerys submitted an Employer Statement to Prudential on Landheim's behalf. On October 26, 2002, Landheim submitted to Prudential a Group Disability Insurance Employee

Statement in which he claimed disability stemming from Scheuermann's Disease, rotator cuff deficiency and Complex Regional Pain Syndrome I.  On October 30, 2002, Landheim's doctor, Carla McElroy, M.D., provided Prudential a Group Disability Insurance Attending Physician's Statement indicating diagnoses of Scheuermann's disease, right rotator cuff arthropathy, Complex Regional Pain Syndrome, radiculitis--cervical, and degenerative arthritis of the back.

      On January 2, 2003, Prudential notified Landheim in a letter that his request for disability benefits was approved, effective December 11, 2002.  The letter instructed Landheim to apply for Social Security disability benefits and to submit proof of his application within 90 days.  Landheim applied for Social Security disability benefits and received a denial in early February of 2003.  Landheim contacted Prudential after receiving the denial from Social Security to ask for Prudential's assistance in appealing the denial.

      Prudential arranged for Landheim to undergo an independent medical evaluation by Michael R. Green, M.D., an orthopedist in St. George, Utah.  The IME took place on June 17, 2003.  Dr. Green's physician's assistant performed Landheim's physical examination.  Dr. Green reviewed all of the medical records that Landheim had submitted at that point and discussed the physical examination with his Physician's Assistant.  Dr. Green concluded that Landheim ought to be able to return to some kind of work, but he did not know the specific requirements of Landheim's occupation because he did not have a specific job description.

      In a letter dated July 15, 2003, Prudential notified Landheim that, based on Dr. Green's conclusions and all of the information obtained during the claim evaluation process, Landheim's long term disability benefits would cease on August 1, 2003.  The letter stated "we have determined that you possess the physical functional capabilities to perform the material and

substantial duties of your sedentary occupation as a Senior Scientific Programmer." Prudential also informed Landheim of his right to three levels of appeal.

Landheim notified Prudential of his intent to appeal the decision in a letter dated July 29, 2003. Plaintiff did not submit new medical records. Rather, he took issue with Dr. Green's evaluation. In a letter, dated August 4, 2003, Prudential reiterated its decision to deny further benefits. Prudential also notified Landheim that his claim had been referred to its vocational team to coordinate job placement services for Landheim. And, Prudential asked Landheim to forward any additional medical records he may have in support of his claim.

Before receiving Prudential's letter, Landheim sent Prudential a follow-up letter on August 5, 2003, indicating that his back pain was escalating significantly and asking Prudential to include this additional information regarding his conditions with his previous appeal letter.

Also around this time, Prudential received a description of Landheim's job and forwarded it to Dr. Green. Dr. Green opined, in a written review dated August 26, 2003, that, based on the job description, Landheim could return to his job "as long as he is not required to lift more than 5 pounds, do any chronic repetitive lifting, or anything requiring him to raise his hands up over his shoulder."

In a letter to Prudential dated August 28, 2003, Landheim provided medical records from Dr. Moore, his orthopedic surgeon, and Dr. Grua, his endocrinologist. The letter stated that despite aggressive treatment, Landheim was still unable to remain seated for longer than one hour. On that same date, Prudential sent Landheim's counsel a letter informing him that the California Department of Insurance had requested that Prudential re-evaluate Landheim's concerns outlined in his July 29, 2003 letter. Prudential also stated that it had temporarily

suspended its vocational rehabilitation referral pending Landheim's appeal.

Landheim continued to submit medical records from several doctors. On September 12, 2003, Prudential arranged for an independent medical file review of Landheim's claim by an outside physician, Dr. Patrick Foye of the New Jersey Medical School. Dr. Foye submitted his report to Prudential on September 23, 2003. Dr. Foye also concluded that there was nothing in the documentation to support impairment from performing a sedentary computer job, with the exception of 4-6 weeks after the November 2002 left shoulder arthroscopy and 2 weeks after the July 11, 2003 right knee arthroscopy.

While Dr. Foye was conducting his review, Landheim continued to submit letters on his behalf from his counsel and medical records from his treating physicians. On September 26, 2003, Prudential informed Landheim that it had completed its review of his first request for reconsideration and that it had determined to uphold its decision to terminate long-term disability benefits. Some of the new materials submitted by Landheim had not been received by Prudential at the time it issued this letter. The new medical information was submitted to Dr. Foye to see if it changed his opinion.

Landheim submitted additional medical information on October 20, 2003, and Prudential referred his file to Jonathan S. Rutchik, M.D. for review. Dr. Rutchik submitted his report to Prudential on October 31, 2003. Dr. Rutchik noted that no treating physician had stated that Landheim was unable to perform the duties of his job and he concluded that it was his opinion that there was no objective evidence that Landheim was unable to do the duties of his position. The only restrictions he found was that Landheim would be unable to do repetitive over head lifting and could not withstand constant sitting.

On November 20, 2003, Prudential notified Landheim that it had completed its review of the second appeal and that it was upholding its decision to terminate long-term disability benefits. Prudential outlined its reasoning and summarized the actions that had been taken on the claim. Prudential also outlined the process for another voluntary appeal or right to file suit.

Landheim submitted a third appeal on March 4, 2004, and included a vocational evaluation by Dina J. Galli, and several updated medical records. Galli's evaluation concluded that Landheim could not perform his job at Accelerys, Inc. because he lacks the physical abilities and mental abilities--with respect to memory, concentration, persistence and social functioning--that would allow successful performance of his skilled and collaborative job. As part of the updated medical records, Landheim also included an independent medical examination performed by Dr. Clark Newhall. Dr. Newhall concluded that when the predicted effects of the complex regional pain syndrome are combined with the recommended treatment for that problem and further combined with the predicted effect of the back pain, it is unlikely that this gentleman could engage in any substantial gainful activity as defined by the Social Security Administration.

Sometime after Prudential received Dr. Newhall's IME report and Ms. Galli's vocational evaluation, it had an internal medical file review performed by James R. Fegan, M.D., Prudential's Medical Director. Prudential notified Landheim on April 14, 2004, that his claim was being reviewed. Dr. Fegan submitted his report on April 22, 2004. Dr. Fegan noted inconsistencies in the medical records and test results, questioned Landheim's efforts when being tested, and disputed the conclusions of Galli and Newhall.

Prudential wrote to Landheim on May 13, 2004, and notified him that it had completed its review of his third appeal and concluded that its decision to terminate long-term disability

<04-cv-00761-DAK Document 45 Filed 04/11/06 Page 7 of 16

benefits was appropriate. Prudential notified Landheim that he had completed the final level of appeal available and the decision was final.

Landheim filed the Complaint in this matter on August 17, 2004. On January 24, 2005, the Social Security Administration issued a Notice of Decision in which the Administrative Law Judge found that Landheim had been disabled since September 12, 2002. Defendants have moved to strike the social security materials attached to Plaintiff's motion for summary judgment because they were not a part of the administrative record.

## DISCUSSION

Landheim argues that Prudential wrongfully denied his claim for long-term disability, whereas Prudential argues that the Plan Administrator's decision denying benefits should be upheld because it is supported by substantial evidence. The parties also dispute the appropriate standard of review that should be applied to the Administrator's decision based on the language in the Plan and the inherent conflict of interest that exists in this case because Prudential is both the insurer of the Plan and the Plan Administrator.

**I. Standard of Review**

The parties dispute whether the case should be reviewed under a de novo standard or the arbitrary and capricious standard. ERISA itself does not specify the standard of review that should be used. However, the United States Supreme Court has held that a denial of benefits challenged under ERISA, "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When the plan grants discretionary authority to the administrator, the denial of benefits

is reviewed under the "arbitrary and capricious" standard.  *Chambers v. Family Health Corp.*, 100 F.3d 818, 825 (10th Cir. 1996).

In this case, the Plan provides that an individual is

> disabled when Prudential determines that:
>
> • you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury;
>
> • you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury; and
>
> • you are under the regular care of a doctor.

The Plan further provides that Prudential "will stop sending you payments and your claim will end on the earliest of the following: . . . . 4.  The date you fail to submit proof of continuing disability satisfactory to Prudential."  And, the Plan states that Prudential "may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor."

Tenth Circuit case law supports a finding that the language of the Plan in this case is consistent with a grant of discretion that would trigger an arbitrary and capricious standard of review.  In *McGraw v. The Prudential Ins. Co. of America*, 137 F.3d 1253 (10th Cir. 1998), the Tenth Circuit held that identical language triggered an arbitrary and capricious standard of review: "Here the Plan expressly gives Prudential discretion to decide what is medically necessary.  It states, "To be considered 'needed', a service or supply must be determined by Prudential to meet all these tests."  *Id.* at 1259.  The language in *McGraw* is essentially the same language as the Plan "You are disabled when Prudential determines."

Although Landheim recognizes the Tenth Circuit case law, he argues that the court

should follow case law from the Seventh Circuit which finds otherwise.  In *Diaz v. Prudential Insurance Co. of America*, 424 F.3d 635, 639 (7th Cir. 2005), the court found that language similar to the Plan language in this case did not adequately notify plan participant's of the discretion conferred on the Administrator.

In *Nance v. Sun Life Ass. Co. of Canada*, 294 F.3d 1263 (10th Cir. 2002), the court Tenth Circuit discussed both *McGraw and Herberger* and indicated that, in light of *McGraw*, the issue was settled in the Tenth Circuit and that an arbitrary and capricious standard of review was appropriate.  *Id.* at 1268.  Although the Tenth Circuit noted that the language relied on was borderline and that courts that have found such language acceptable in the past may not do so in the future, this court views the issue settled until the Tenth Circuit decides to change course.

The Plan also provides that any proof of claim offered by a participant must be "satisfactory to Prudential."  In *Ray v. UNUM Life Ins. Co. of America*, 314 F.3d 482 (10th Cir. 2002), the Court stated that its "recent decision in *Nance v. Sun Life Assurance Co. of Canada*, 294 F.3d 1263 (10th Cir. 2002), clarifies what language confers discretion on a plan administrator."  The court explained that it "distinguished plan terms that require submission of 'satisfactory proof' from those that require submission of 'proof satisfactory to [the plan administrator]." *Id.* at 1267-68.  "[L]anguage requiring proof 'satisfactory to [the plan administrator]' suffices to convey discretion to a plan administrator."  *Ray*, 314 F.3d at 486.  Therefore, the language in this case is also sufficient to convey discretion to Prudential.  The language vests in Prudential both the authority and the discretion to determine Policy interpretation.  Accordingly, this language triggers an arbitrary and capricious standard of review.

While the Plan language giving the administrator discretion indicates that the court should review Prudential's actions under an arbitrary and capricious standard, Prudential recognizes that there is an inherent conflict of interest because it operates as the claims administrator and the insurer of the plan. *Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.2d 1291, 1296 n.4 (10th Cir. 2000). In *Fought v. UNUM Life Ins. Co. of America*, 379 F.3d 997 (10th Cir. 2004), the Tenth Circuit established a framework for determining the effect of a conflict of interest on the district court's review under the arbitrary and capricious standard of review. In cases of an inherent conflict of interest, the burden of proof shifts and "the plan administrator must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." *Id.* at 1006. "The district court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict fo interest." *Id.*

Plaintiff argues that even if this court finds a grant of discretion under the Plan language, the inherent conflict of interest in this case should move the standard of review down the spectrum near *de novo* and the court should give the plan administrator little deference. In *Fought*, however, the court noted that a conflicted claims administrator may rebut the presumed conflict of interest by engaging in "independent medical evaluation." *Fought*, 379 F.3d at 1015. In this case, Prudential conducted three independent medical evaluations of Landheim's claim. Each of these evaluations concluded that Landheim retained enough residual sedentary work capacity to perform the material and substantial duties of his job.

The court finds that Prudential bears the burden of proving that its decision is reasonable

and is supported by substantial evidence.  Substantial evidence requires 'more than a scintilla but less than a preponderance.'" *Sandoval*, 967 F.2d at 382.  The court does not believe, however, given the number of independent evaluations that were conducted, that there is a basis for moving the standard of review closer to the *de novo* end of the standard of review spectrum.

## II.  Determination of Disability

Landheim's main contention with respect to the propriety of the disability determination is that Prudential improperly failed to consider the non-physical requirements of Landheim's job in evaluating his claim for long-term disability benefits and it was an abuse of discretion to focus on the relatively minimal physical requirements of his position when the substantial part of his duties consists of cognitive abilities which were impaired by his pain and pain management issues.

However, there is evidence in the administrative record that Prudential considered non-physical elements of Landheim's position.  Prudential considered and evaluated the cognitive problems Landheim complained of and sought information regarding his position's cognitive requirements from Landheim's employer.  Prudential asked if he had periods of reading, researching, reviewing, attending meetings, etc.  These exchanges demonstrate that Prudential was interested in more than just the physical requirements of the job.  The record indicates that the primary cause of any cognitive deficits Landheim may have complained of was the effect of the various medications he had been taking to treat his conditions.   None of Landheim's treating or examining physicians mention that Landheim appeared cognitively dulled or deficient or that he otherwise demonstrated objective evidence of any cognitive impairment.  To the contrary, they observed that Landheim appeared alert and cognitively appropriate.   The vast majority of

Landheim's own physicians' reports focus on Landheim's physical impairments and limitations.

Landheim relies on *Gaither v. Aetna Life Ins. Co.*, 388 F.3d 759, 769 (10th Cir. 2004), in which the court was troubled by the plan administrator's failure to recognize the true nature of the claimant's job requirements. *Gaither*, however, is in stark contrast to this case because it involved a case where there was little or no evidence in the record. The record in this case demonstrates that Prudential sought extensive information regarding Landheim's conditions and conducted several reviews.

Landheim also relies on a recent decision issued in this district in which the court found that even though a civil engineer's job was sedentary, the claimant's physical ailments impaired her cognitive ability and analytical skills, which were important duties of her job. *Smith v. Provident Life & Accident Ins. Co.*, Civil No. 2:03cv804TC. But *Smith* is distinguishable because the insurer never arranged for an independent medical examination of the claimant, all of the medical reviews were conducted by in-house medical personnel. Whereas, in this case, Prudential arranged for three independent reviews.

Furthermore, Landheim argues that Prudential wrongfully imposed a requirement that Landheim present objective medical evidence of his disability. Insurers may insist on the presentation of objective medical evidence supporting disability only when the language of the disability plan or insurance policy explicitly contains that requirement. The Tenth Circuit has recognized that "medicine is, at best, an inexact science, and we should not disregard the great weight of the evidence merely because objective laboratory diagnostic findings either are not yet within the state of the art, or are inconclusive." *Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 467 (10th Cir. 1997). Prudential asserts, however, that it did not require Landheim to

present objective evidence of disability.

The Plan in this case required proof satisfactory to Prudential. Therefore, it has the discretion to determine the sufficiency of the proof. Given this policy language, it would have been reasonable for Prudential to require objective evidence to support Landheim's claim. Nonetheless, Prudential did not base its decision solely on the absence of objective evidence.

Landheim also contends that Prudential failed to provide a full and fair review of his claim and proceeded more in the nature of an adversary. Landheim claims that Prudential's actions violated ERISA's claim procedure requirements and it was selective in the information it chose to focus on when reviewing Landheim's records. This argument, however, appears to be without basis. The record demonstrates that Prudential went through several levels of review and considered new information that was being forwarded to it by Landheim. Moreover, there was nothing improper with Dr. Green relying on the physical examination conducted by his physician's assistant.

Landheim contends that this case is not about a difference of opinion between health care providers. But even Landheim's treating physicians do not agree among themselves as to Landheim's diagnoses and treatment. With regard to the differences of opinion between Landheim's treating and evaluating physicians and those retained by Prudential to provide medical record reviews and independent medical evaluation, nothing in ERISA "suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). It is settled law that Prudential's medical experts are due no less deference in their

opinions than are plaintiff's experts.

Given the disagreements among the experts, the court believes there is substantial evidence to support Prudential's decision in this case. There is no evidence that Prudential acted arbitrarily or capriciously. The record demonstrates that Prudential's decision was the result of a thorough and independent investigation of Landheim's claims. Moreover, Prudential initially approved Landheim's claim pending further investigation and analysis of the claim. This does not demonstrate that there was any effort to unjustifiably deny Landheim's claim.

Landheim's physical complaints can be summarized as follows: upper right extremity pain of unknown etiology; chronic mid- and low back pain, and cognitive difficulties associated with narcotic pain reliever use. As to the first category, Landheim's own physician opined that "if [Landheim] does indeed have complex regional pain probably the most important thing is continued normal use of the extremity." This is in accordance with the opinions of Prudential's experts, Drs. Green, Foye, Rutchik, and Fegan, all of whom opined that Landheim retained enough sedentary work capacity to use a keyboard and an optical mouse in a setting such as he was accustomed to before he quit his job. Only Dr. Newhall, Landheim's retained expert, opined that Landheim could not perform even the minimal physical movements required by his sedentary job writing computer software. Dr. Newhall's report of Landheim's strength and range of movement, however, showed results so restrictive as to be anomalous compared with the results of Landheim's own treating physicians. Dr. Fegan found the results of Newhall's examination to suggest symptom magnification by Landheim.

Regarding Landheim's back pain, all of the doctors who examined Landheim or his medical records agreed that this was a long-standing, chronic condition. None offered evidence

that the condition had deteriorated.  Also, none of Landheim's treating physicians except Newhall ever noted that Landheim needed to adjust his seating or stand up repeatedly during any of the examinations or consultations with him.  Moreover, Landheim's employer remained ready to make any reasonable accommodation to allow Landheim to work through the difficulties of his back and his shoulder.

As a whole, the administrative record does not support Landheim's contention that he is disabled from his job.  Plaintiff's own physicians agree that continued use of his right arm, within the limitations that Dr. Green stated—is the best thing for Landheim's condition.  There is no evidence in the record that any of the other chronic conditions from which Landheim suffers preclude him from performing the material and substantial duties of his job.  Nor is there evidence that he is disabled based on his cognitive abilities or inability to perform other non-physical requirements of his job.  Therefore, Prudential's decision to terminate Landheim's long-term disability benefits was supported by substantial evidence.

## **MOTION TO STRIKE**

Defendants move the court for an order striking the Social Security documents included in Landheim's motion for summary judgment.  Under the arbitrary and capricious standard of review applicable in this ERISA matter, the district court reviews only the administrative file that was before the administrator at the time its decision was made.  *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992).  "In effect, the curtain falls when the fiduciary completes its review, and for purposes of determining if substantial evidence supported the decision, the district court must evaluate the record as it was at the time of the decision."  *Id.* at 381.  The Social Security documents are not part of the administrative record as they became

available after Prudential had reached its final decision and this case had been instituted.

Landheim agrees that if the court determines that the appropriate standard of review in this case is arbitrary and capricious, the court's review would be limited to the information and arguments presented by the parties in the administrative appeal process and information regarding Landheim's Social Security disability award would be inadmissible.

Because the court has determined that the proper standard of review in this case is arbitrary and capricious, the court grants Defendants' motion to strike.  Even if a de novo standard of review applied, nothing would compel the inclusion of the social security determination because there still must be a clear showing that the additional evidence is necessary to review the administrator's decision.  The Social Security determination has little or no relevance to the question of whether Prudential's decision was correct.

## CONCLUSION

Based on the above reasoning, Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED.  Defendants' Motion to Strike is also GRANTED.

DATED this 11th day of April, 2006.

BY THE COURT

_____
DALE A. KIMBALL
United States District Judge